UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CERVANTES ORCHARDS & VINEYARDS, LLC, a Washington limited liability corporation; CERVANTES NURSERIES, LLC, a Washington limited liability corporation; CERVANTES PACKING & STORAGE, LLC, a Washington limited liability corporation; MANCHEGO REAL, LLC, a Washington limited liability corporation; JOSE G. CERVANTES and CYNTHIA C. CERVANTES, individually, and upon behalf of their community property marital estate; | NO:  1:14-CV-3125-RMP<br><br>ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS |
|                Plaintiffs,<br>   v. | |
| DEERE & COMPANY, a corporation; DEERE CREDIT, INC., a corporation; JOHN DEERE CAPITAL CORPORATION, a corporation; JOHN DEERE FINANCIAL FSB, a corporation formerly known as FPC Financial; DEERE CREDIT SERVICES, INC., a corporation; AMERICAN WEST BANK, a corporation; SKBHC HOLDINGS, LLC, a Washington limited liability | |

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 1

1  corporation; T-16 MANAGEMENT
   CO, LTD, a Washington corporation;
2  GARY JOHNSON and LINDA
   JOHNSON, individually and upon
3  behalf of their community property
   marital estate; NW MANAGEMENT
4  REALTY SERVICES, INC, a
   Washington corporation also known as
5  Northwest Farm Management
   Company; and ROBERT WYLES and
6  MICHELLE WYLES, individually and
   upon behalf of their community
7  property marital estate,

8                          Defendants.

9       Before the Court is the Deere Defendants' Motion to Dismiss Plaintiffs'

10 Second Amended Complaint, ECF No. 91.[1]  The Court has reviewed the record

11 and the parties' arguments.

12                          BACKGROUND

13      Plaintiffs constitute a farming group that grows crops including apples,

14 pears, grapes, and cherries.  ECF No. 74 at 4.  Plaintiffs assert that multiple

15 defendants engaged in a broad scheme of misconduct involving racketeering,

16 extortion, fraud, and civil rights violations.  *See* ECF No. 74 at 17-24.

17      In 2003, Deere Credit, Inc. ("DCI") loaned money to Plaintiffs.  *See* ECF

18 No. 92, Ex. A at 3 (First Amended Order Confirming Chapter 11 Plan).[2]  Plaintiffs

19

20 [1] The "Deere Defendants" are Deere & Company, Deere Credit, Inc., John Deere Capital
   Corporation, John Deere Financial, f.s.b. f/k/a FPC Financial, and Deere Credit Services, Inc.

21 [2] Where appropriate, the Court refers to background information found in documents that were
   provided by the parties that are referred to in the Second Amended Complaint and to which no
   party objects.  *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (when deciding a

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 2

defaulted on their obligations to DCI, and eventually Plaintiff Cervantes Orchards & Vineyards, LLC ("COV") filed for bankruptcy. *See* ECF Nos. 74 at 2; 92, Ex. A at 1. A bankruptcy plan was adopted, which required COV to satisfy the debt to DCI by December 31, 2009. ECF Nos. 74 at 5; 92, Ex. A at 7. Plaintiffs allege that adverse economic conditions prevented them from meeting the payment deadline. ECF No. 74 at 6.

Plaintiffs assert that DCI "demanded a high rate of interest of 9.75% and an aggressive principal reduction during the term explicitly mandated within the plan of reorganization," between April 2007 and December 31, 2009. ECF No. 74 at 5. Jose Cervantes, COV's principal owner, proposed that DCI restructure financing for the debt so that COV could maintain its operations. ECF No. 74 at 6. Even though Mr. Cervantes informed DCI that he and the Cervantes Farming Group had substantial equity in their real property to support repayment of the debt, DCI refused to refinance the debt. ECF No. 74 at 6. COV alleges that it paid all interest due and reduced the amount of principal owed. ECF No. 74 at 6. As of December 31, 2009, Plaintiffs' debt to DCI was reduced from $4,941,876.77 to $4,339,378.27. ECF Nos. 74 at 5; 92, Ex. A at 4.

On January 8, 2010, DCI moved the bankruptcy court for an order appointing a liquidating agent pursuant to the terms of the bankruptcy plan. ECF

---

motion to dismiss, court may "consider documents that were not physically attached to the complaint where the documents' authenticity is not contested, and the plaintiff's complaint necessarily relies on them").

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 3

No. 74 at 6-7.  DCI represented to the bankruptcy court that T-16 Management

Company, Ltd. ("T-16"), an auction firm, was well qualified for the position.  ECF

No. 74 at 7.  Plaintiffs claim that DCI failed to search for any other potential

liquidating agents.  ECF No. 74 at 7.  Plaintiffs further "allege that counsel of

record representing Deere Credit, Inc., Roger Bailey, Esq., of Bailey and Busey,

PLLC, also represented the interests of T-16 because T-16 had served and acted

under the direction and control of Deere Credit, T-16's principal."  ECF No. 74 at

7.  The bankruptcy court appointed T-16 as the liquidating agent and ordered COV

to turn over all control of the orchards that constituted collateral for the debt owed

to DCI.  *See* ECF No. 74 at 7-8.

Plaintiffs allege that T-16 failed to care properly for the real property.  After

Plaintiffs turned over the property on March 17, 2010, Plaintiffs assert that no

farming activities took place for over a week, despite Mr. Cervantes's warnings

that it was necessary to protect the crops against the frost.  ECF No. 74 at 8.

With DCI's approval, T-16 hired Northwest Management and Realty

Services, Inc., a.k.a Northwest Farm Management ("NWFM") to manage the

property.  ECF No. 74 at 8.  Plaintiffs allege that NWFM in turn contracted with

workers who lacked proper farm labor contractor licensing.  ECF No. 74 at 8.

Furthermore, Plaintiffs claim that both T-16 and DCI knew that NWFM lacked a

statutorily required farm labor contractor license.  ECF No. 74 at 8.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 4

According to Plaintiffs, persons believed to be NWFM employees removed personal property from the orchards. ECF No. 74 at 9. Specifically, the persons allegedly took truckloads of smudge pots to land owned by Defendants Robert and Michelle Wyles and former defendant Scott Anderson.[3] ECF No. 74 at 9. If the smudge pots had been kept on Plaintiffs' property, Plaintiffs claim that they could have been used to protect the crops from frost damage. ECF No. 74 at 9.

Plaintiffs assert that the refusal to maintain the real property was a direct result of the concerted efforts of multiple defendants, including DCI. ECF No. 74 at 9. Plaintiffs claim that the intent of these defendants was to obtain Plaintiffs' business and property. ECF No. 74 at 9.

As a result of T-16's conduct, COV moved the bankruptcy court to remove the firm as the liquidating agent. ECF No. 74 at 9. In response, Mr. Anderson filed a declaration, which Plaintiffs assert is fraudulent. ECF No. 74 at 10. Plaintiffs claim that because of the fraudulent declaration, Mr. Cervantes was prohibited from entering the real property. ECF No. 74 at 10. Plaintiffs allege that DCI, by aiding and abetting other defendants: caused COV's laborers to work on other orchards that NWFM managed; charged COV for the time and expense of using equipment on other NWFM property; charged COV for labor and supplies

---

[3] In its Complaint for Violations of Court Order and Damages, COV asserted that "[t]he persons principally associated with, and who control, NWFM are Scott J. Anderson ('Anderson') and Rob Wyles ('Wyles')." ECF No. 92, Ex. E at 2. Mr. Anderson passed away, and his estate was not listed as a defendant in the Second Amended Complaint. *See* ECF Nos. 74 at 1; 100, Ex. 3 at 4.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 5

that NWFM used; and threatened and retaliated against COV labor contractors hired by COV if those contractors refused to cooperate with NWFM.  *See* ECF No. 74 at 10-11.

Plaintiffs contend that these actions were intended to reduce the value of the real property so that it "could be sold by Deere and American West Bank to customers and friendly parties at greatly diminished prices."  ECF No. 74 at 11.  By the time that the property was sold in 2010 and 2011, Plaintiffs allege that the mismanagement had rendered it virtually worthless.  ECF No. 74 at 11.

The Deere Defendants' alleged misconduct continued after the sale of the property.  Plaintiffs assert that DCI sought to conceal from COV and the bankruptcy court a settlement agreement that concerned the sale of damaged apples.  ECF No. 74 at 13.  The settlement agreement included a confidentiality provision, which Plaintiffs contend was meant to conceal the sale of a particular block of property.  ECF No. 74 at 13.  Also, Plaintiffs claim that on August 17, 2011, Robert Thompson, a representative from John Deere Financial, Inc., called Mr. Cervantes, threatening him with "immediate problems" if he did not resolve his dispute with DCI.  ECF No. 74 at 14.

Furthermore, Plaintiffs contend that DCI discriminated against Plaintiffs in its lending practices by requiring them and other Hispanic farm owners to provide a disproportionately large amount of capital to secure corporate and personal loans.  ECF No. 74 at 15.  DCI also allegedly refused requests from Plaintiffs and other

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 6

Hispanic farm owners to extend or modify the terms of debt repayment.  ECF No. 74 at 15.

The parties have pursued previous legal actions related to these incidents. On November 16, 2009, DCI filed a complaint in state court against Plaintiffs other than COV ("non-COV Plaintiffs"), for breach of a forbearance agreement and for judgment and foreclosure of mortgages and security interests ("Foreclosure Action").  ECF No. 92, Ex. B.  Also, on May 31, 2012, COV filed an amended adversary complaint against NWFM, Mr. Anderson, Mr. Wyles, and T-16 in its bankruptcy case, alleging that the defendants had committed acts including fraud, misrepresentation, conversion, unjust enrichment, tortious interference with reasonable business expectancy, breach of fiduciary trust, and gross negligence. ECF No. 100, Ex. 2.

Here, Plaintiffs claim that the Deere Defendants violated multiple provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Together with other defendants, Plaintiffs allege that the Deere Defendants constituted a continuing criminal enterprise that engaged in and conspired to engage in racketeering, extortion, and fraud.  ECF No. 74 at 17-22.  Plaintiffs further assert violations of federal civil rights statutes.  ECF No. 74 at 22-23.

ANALYSIS

The Deere Defendants move to dismiss the case, contending that Plaintiffs' RICO theory is implausible, that Plaintiffs' claims are barred by the doctrine of res

judicata, and that Plaintiffs have failed to allege sufficient facts to support any of the predicate acts that supposedly support their RICO theory.  Furthermore, the Deere Defendants assert that Plaintiffs' lending discrimination claims are time barred.

*Motion to Dismiss Standard*

The Federal Rules of Civil Procedure allow for the dismissal of a complaint where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss brought pursuant to this rule "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Supreme Court has offered the following method for assessing the sufficiency of a complaint:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A plaintiff is not

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 8

required to establish a probability of success on the merits; however, he or she must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

### 1. Res Judicata

The Deere Defendants argue that res judicata precludes COV's claims against them because COV alleged the same claims against the same parties in its adversary complaint, which the bankruptcy court dismissed with prejudice. ECF No. 91 at 10-12. According to the Deere Defendants, the non-COV Plaintiffs also raised similar issues as affirmative defenses or counterclaims in the state court Foreclosure Action. ECF No. 91 at 7.

Res judicata bars the litigation of claims in a later action that were raised or could have been raised in a prior action. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). "The doctrine is applicable whenever there is '(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.'" *Id.* (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).

The Deere Defendants contend that the judgments entered in the adversary proceeding and in the Foreclosure Action preclude the current lawsuit under the doctrine of res judicata. *See* ECF No. 91 at 10-12. However, for the reasons discussed below, the Court concludes that neither of the prior actions bars Plaintiffs' lawsuit against the Deere Defendants.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 9

1    In regard to the adversary proceeding, the parties to that action are not

2    identical to or in privity with the current litigants. "'Privity'—for the purposes of

3    applying the doctrine of *res judicata*—is a legal conclusion 'designating a person

4    so identified in interest with a party to former litigation that he represents precisely

5    the same right in respect to the subject matter involved.'" *In re Schimmels*, 127

6    F.3d 875, 881 (9th Cir. 1997) (quoting *Southwest Airlines Co. v. Texas Int'l*

7    *Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir.), *cert. denied*, 434 U.S. 832 (1977)).

8    The Deere Defendants assert that DCI is the only entity among them that

9    allegedly committed the actionable conduct and that DCI "is the same party that

10   was named in the Adversary action . . . ." ECF No. 91 at 12. Although DCI was

11   named in the original adversary complaint that COV filed, none of the Deere

12   Defendants were included in the first *amended* adversary complaint, which was the

13   complaint that resulted in a judgment. *See* ECF No. 100, Ex. 2. Also, it does not

14   appear that any of the defendants listed in the first amended adversary complaint,

15   NWFM, Mr. Anderson, Mr. Wyles, or T-16, qualify as being in privity with the

16   Deere Defendants. Thus, the Deere Defendants have failed to establish that the

17   resolution of the adversary action precludes the current lawsuit under the doctrine

18   of res judicata.

19   The Deere Defendants also have failed to show that the Foreclosure Action

20   bars the current lawsuit because the actions lack an identity of claims. "The central

21   criterion in determining whether there is an identity of claims between the first and

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 10

second adjudications is 'whether the two suits arise out of the same transactional

nucleus of facts.'"  *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir.

2000) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th

Cir. 1982)).  In the Foreclosure Action, the non-COV Plaintiffs asserted against

DRI affirmative defenses related to racial discrimination and improper loan

administration.  ECF No. 92, Ex. I at 7-11.

    Although some of the facts underlying the affirmative defenses asserted in

the Foreclosure Action arise from the same facts alleged in this matter, the current

claims also are based on events that occurred after the non-COV Plaintiffs had

filed their answer in the Foreclosure Action.  For example, the answer in the

Foreclosure Action, dated December 24, 2009, predates DCI's motion to appoint

T-16 as the liquidating agent, which is a fact that Plaintiffs allege in support of

their theory of bankruptcy fraud.  *See* ECF Nos. 74 at 6-7; 92, Ex. I at 12.  The

current allegation that DCI was aware that NWFM lacked the necessary farm labor

contractor license also could not have been raised in the non-COV Plaintiffs'

answer in the Foreclosure Action because T-16 had not yet been appointed and,

therefore, had not hired NWFM.  *See* ECF No. 74 at 8.

    The Court finds that the claims in the current lawsuit are not identical with

those in the Foreclosure Action, nor could they have been raised at the time of the

prior action.  Thus, the disposition of the Foreclosure Action does not preclude

1    Plaintiffs' current claims.  The Deere Defendants have failed to establish that

2    Plaintiffs' current claims are barred by res judicata.

3        *2. RICO violations*

4        The Deere Defendants also argue that Plaintiffs failed to state a claim for

5    RICO violations.  ECF No. 91 at 13-19.  RICO's private right of action provides in

6    relevant part that "[a]ny person injured in his business or property by reason of a

7    violation of section 1962 of this chapter may sue therefor in any appropriate United

8    States district court and shall recover threefold the damages he sustains and the

9    cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).

10       Plaintiffs allege that the Deere Defendants violated provisions of the RICO

11   Act found in 18 U.S.C. §§ 1962(c) and (d).  ECF No. 74 at 17-22.  Subsection (c)

12   prohibits any person associated with an enterprise that conducts interstate

13   commerce from participating in the enterprise's affairs through a "pattern of

14   racketeering activity" or collection of unlawful debt.  18 U.S.C. § 1962(c).

15   Subsection (d) proscribes the conspiracy to violate subsection (c).  18 U.S.C. §

16   1962(d).

17       "Racketeering activity" includes any act that is indictable under the Hobbs

18   Act, 18 U.S.C. § 1951, and a number of specified acts that are "chargeable under

19   State law and punishable by imprisonment for more than one year."  18 U.S.C. §

20   1961(1)(A), (B); *see also United Bhd. of Carpenters & Joiners of Am. v. Bldg. &*

21   *Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).  A plaintiff

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 12

must allege at least two predicate racketeering acts to state a "pattern" of racketeering that would establish a violation of the RICO Act.  18 U.S.C. § 1961(5); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).  "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'"  *Turner*, 362 F.3d at 1229 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

Here, Plaintiffs allege that the Deere Defendants committed extortion, bankruptcy fraud, and mail and wire fraud, all of which are predicate racketeering acts.  *See* ECF No. 74 at 19-20; 18 U.S.C. § 1961(1) (identifying extortion, "any offense involving fraud connected with a [bankruptcy] case[,]" and mail and wire fraud as predicate RICO acts).  The Deere Defendants argue that Plaintiffs have failed to plead plausible claims for any of these predicate acts.

*a. Extortion*

Plaintiffs allege that Defendants committed acts of extortion under the Hobbs Act and state law by conspiring to obtain and in fact obtaining Plaintiffs' real property "with Plaintiffs' consent, induced by the wrongful use of fear of economic harm . . . ."  ECF No. 74 at 19-20.

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence,

or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).[4] "Fear," in this

context, "can include fear of economic loss." *United Bhd. of Carpenters*, 770 F.3d

at 838. However, because fear of economic loss also plays a lawful role in

business transactions, courts must "differentiate between legitimate use of

economic fear—hard bargaining—and wrongful use of such fear—extortion." *Id.*

Although it can be difficult to distinguish hard bargaining from extortion, the Ninth

Circuit has relied on a Supreme Court holding "that a defendant violates the Hobbs

Act only 'where the obtaining of the property would itself be "wrongful" because

the alleged extortionist has no lawful claim to that property.'" *Id.* (quoting *United*

*States v. Enmons*, 410 U.S. 396, 400 (1973)).[5]

Here, Plaintiffs allege that the Deere Defendants committed predicate RICO

acts of extortion by engaging in discriminatory lending practices, mismanaging the

collateral properties, and threatening "to resolve the dispute between Plaintiffs and

DCI or face immediate problems . . . ." ECF No. 98 at 14. According to Plaintiffs,

---

[4] Washington State law provides that "'[e]xtortion' means knowingly to obtain or attempt to obtain by threat property or services of the owner . . . ." RCW 9A.56.110. Although Plaintiffs listed both state and federal law in the section of the Second Amended Complaint regarding extortion, the parties discuss only the federal definition in their briefing and do not contend that federal and state extortion laws differ materially. *See* ECF Nos. 91 at 15-17; 98 at 13-14. Accordingly, the Court considers the federal definition of the term.

[5] Plaintiffs incorrectly proffer that a "'[l]awful claim' has no place when the context of the alleged extortion is outside the realm of labor disputes." *See* ECF No. 98 at 15. While the Ninth Circuit has not extended the lawful-claim defense as to *violence* beyond the context of labor disputes, *United States v. Daane*, 475 F.3d 1114, 1119 (9th Cir. 2007), the defense generally may be raised as to non-violent hard bargaining tactics used in instances other than labor disputes, *see, e.g.*, *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014) (considering whether online review company was required by law to publish positive reviews for business).

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 14

their business relationship with the Deere Defendants was never a negotiation; rather, Plaintiffs claim that the Deere Defendants imposed excessive lending conditions on Plaintiffs and refused to allow them to refinance their obligations. ECF No. 98 at 13.

The Court finds that Plaintiffs have not alleged sufficient facts to support a claim that the Deere Defendants committed predicate acts of extortion.  Plaintiffs may lack the business acumen of the Deere Defendants, but they do not allege facts to support the proposition that any fear, economic or otherwise, induced them to enter into the initial business relationship with the Deere Defendants.  Nor do Plaintiffs assert any reason why the Deere Defendants were required to restructure the financing of COV's debt after COV had filed for bankruptcy and defaulted on its obligation to repay DCI under the terms of the bankruptcy plan.  Although the Deere Defendants could have chosen to alter repayment to terms more favorable to COV, Plaintiffs have alleged no circumstances indicating that it was an act of extortion for the Deere Defendants to decline to do so.  This conduct does not rise to the level even of hard bargaining; the bargain already had been struck, and the Deere Defendants were not obliged to revisit it.

Plaintiffs also have failed to state plausibly how the alleged mismanagement of the collateral property constitutes a predicate act of extortion.  Plaintiffs' theory in regard to mismanagement of the property makes no sense in the context of extortion.  The property already was part of the bankruptcy estate, of which the

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 15

Deere Defendants were creditors. Thus, it is unclear how the use of fear or force would assist the Deere Defendants in obtaining Plaintiffs' property.

Finally, Plaintiffs have not alleged sufficient facts to claim that Robert Thompson's threat of "immediate problems" constituted a predicate act of extortion. Although the statement may have threatened an unlawful consequence if Plaintiffs failed to resolve their dispute with DCI, "immediate problems" just as likely may have referred to the onerous, but lawful, burden of litigation. The alleged threat is too vague for the Court to attach any improper meaning to it. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In sum, the Court finds that Plaintiffs have failed to allege any predicate acts of extortion in support of their RICO claims against the Deere Defendants.

*b. Bankruptcy Fraud*

The Court next determines whether Plaintiffs adequately have alleged predicate acts of bankruptcy fraud. Plaintiffs contend that the Deere Defendants were the principals of T-16 and NWFM, such that the Deere Defendants are responsible for those entities' alleged fraudulent acts, including the embezzlement of property. ECF No. 98 at 12. Plaintiffs also allege that DCI, T-16, NWFM, Anderson, and Wyles committed bankruptcy fraud by seeking to conceal from the

1  bankruptcy court a settlement agreement that would have revealed the true extent

2  of the damage to a portion of the collateral property.  ECF No. 98 at 12.

3      Plaintiffs allege that the Deere Defendants committed predicate RICO acts

4  of bankruptcy fraud in violation of 18 U.S.C. §§ 152 and 153.  ECF No. 74 at 20.

5  Section 152 prohibits, among other acts, knowingly and fraudulently concealing

6  property of a bankruptcy estate and knowingly and fraudulently making a false

7  declaration in or in relation to a bankruptcy case.  18 U.S.C. § 152(1), (3).  Section

8  153 prohibits certain persons with access to bankruptcy estate property or

9  documents from knowingly and fraudulently appropriating or embezzling the

10  estate's property.  18 U.S.C. § 153.

11      In support of the alleged bankruptcy fraud, Plaintiffs claim that the Deere

12  Defendants are liable for the alleged fraudulent acts of the liquidating agent, T-16,

13  because that entity was ordered in the bankruptcy plan to "take its direction from

14  DCI or as otherwise directed by the Court."  *See* ECF Nos. 98 at 12; 92, Ex. A at 8.

15  T-16, along with other Defendants, allegedly embezzled property from the

16  bankruptcy estate, charged COV expenses for labor and equipment that were used

17  on other property, and applied minimal labor and resources to the estate property.

18  ECF No. 74 at 11-12.  Plaintiffs further claim that the Deere Defendants are liable

19  for the false sworn declaration that NWFM's co-owner, Mr. Anderson, allegedly

20  filed in bankruptcy court.  ECF No. 98 at 12.

21

However, Plaintiffs have not asserted sufficient facts to adequately plead that the Deere Defendants are liable for the alleged fraud perpetrated by T-16 or others.  Although the bankruptcy plan provided that T-16 would take direction from DCI, Plaintiffs have asserted no facts indicating that DCI or the other Deere Defendants would be liable for T-16's allegedly fraudulent acts.  Nor do Plaintiffs provide factual assertions to support the contention that the Deere Defendants are liable for the allegedly false declaration.  Rather, Plaintiffs' assertion of the Deere Defendants' vicarious liability is a legal conclusion, which is not entitled to an assumption of truth.  *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity.  We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

Excluding Plaintiffs' conclusory statement that the Deere Defendants are liable for the actions of T-16 and NWFM, the Court finds that Plaintiffs have not raised a plausible claim that the Deere Defendants committed any RICO predicate acts of bankruptcy fraud.

### c. Mail and Wire Fraud

Plaintiffs also allege that the Deere Defendants committed mail and wire fraud.  ECF No. 74 at 20-21.  To allege mail fraud in violation of 18 U.S.C. § 1341, "it is necessary to show that (1) the defendants formed a scheme or artifice

to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399-400 (9th Cir. 1986). Wire fraud, in violation of 18 U.S.C. § 1343, "consists of (1) the formation of a scheme or artifice to defraud (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Id.* at 1400.

Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with particularity. "[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 1401.

Plaintiffs claim that the Deere Defendants violated the mail and wire fraud statutes in their scheme to defraud Plaintiffs of their property by concealing the settlement agreement from Plaintiffs and concealing the relationship between "the Deere Entities, NWFM, T-16 and the Cervantes Attorneys[,]" among other acts.[6] ECF No. 74 at 20. The alleged fraud involved the use of emails and mailings about bankruptcy court filings. ECF No. 74 at 20-21.

---

[6] Although the record does not identify the "Cervantes Attorneys" with precision, they apparently are Bruce Johnston and Dale Foreman, ECF No. 99 at 9, who were dismissed voluntarily before Plaintiffs filed the Second Amended Complaint, *see* ECF No. 27.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 19

Plaintiffs have failed to assert sufficient facts to claim that the Deere Defendants committed predicate RICO acts of wire or mail fraud. Even according to the asserted facts, there is no indication that the Deere Defendants were aware of the settlement agreement, which was between other parties. *See* ECF No. 74 at 13-14. Nor, as discussed above in regard to bankruptcy fraud, have Plaintiffs pleaded with sufficient specificity how the Deere Defendants would be liable for acts committed by T-16.

In sum, Plaintiffs have failed to assert plausible RICO predicate acts to support a claim that the Deere Defendants violated 18 U.S.C. § 1962(c). Because Plaintiffs have not stated a substantive RICO claim against the Deere Defendants, their RICO conspiracy allegation under 18 U.S.C. § 1962(d) fails as to these defendants as well. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we find that [plaintiff] has failed to allege the requisite substantive elements of RICO, the conspiracy cause of action cannot stand.").

### 3. Lending Discrimination

The Deere Defendants argue that Plaintiffs' discrimination claims should be dismissed because they are barred by res judicata, statutes of limitations, and waiver. ECF No. 91 at 19-21. The Court finds that Plaintiffs' discrimination claims are precluded by the applicable statutes of limitations and therefore does not consider the Deere Defendants' remaining arguments.

Plaintiffs assert discrimination claims pursuant to 42 U.S.C. §§ 1981, 1982, 1985(3), and 1986. ECF No. 74 at 22-23. The parties do not dispute that a four-year statute of limitations governs Plaintiffs' claim brought under § 1981. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-85 (2004) (discussing 28 U.S.C. § 1658).[7] Washington's three-year statute of limitations for personal injury actions, RCW 4.16.080(2), governs claims brought pursuant to 42 U.S.C. § 1985(3). *See Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (per curiam) (applying California's analogous statute of limitations). The same rule controls § 1982 claims. *See Mitchell v. Sung*, 816 F. Supp. 597, 600 (N.D. Cal. 1993) ("Because section 1982 does not have a statute of limitations, courts apply the applicable state statute of limitations."). A one-year statute of limitations applies to claims under § 1986. 42 U.S.C. § 1986.

---

[7] Section 1658's four-year statute of limitations applies to actions brought under federal statutes that were enacted after December 1, 1990. *Jones*, 541 U.S. at 371. In *Jones*, the Court explained that § 1658 applies to claims that were made possible by an amendment to § 1981 that occurred after December 1, 1990. *Id.* at 383. Racial harassment in employment is an example of a § 1981 claim that was not possible under the pre-1990 version of the section. *See id.* Some § 1981 claims, however, instead remain subject to the most analogous statute of limitations under state law. *See, e.g.*, *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 n.2 (9th Cir. 2008) (applying forum state's statute of limitations to failure-to-hire claim, which was cognizable under pre-1990 version of § 1981). The applicable statute of limitations under Washington State law would be the three-year limitation for a lawsuit alleging personal injury, RCW 4.16.080(2). *See Beauregard v. Lewis Cnty., Wash.*, No. C05-5738RJB, 2006 WL 2924612, at *8 (W.D. Wash. Oct. 10, 2006) (citing *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711-12 (9th Cir. 1993)). The parties do not address whether Plaintiffs' § 1981 claim would have been cognizable under the pre-1990 version of the law. However, because the parties do not dispute that the federal four-year statute of limitations applies and because the issue does not affect the Court's decision, the Court assumes, for purposes of this motion, that the longer statute of limitations is applicable.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 21

1    Although the relevant state statute of limitations applies to some of

2    Plaintiffs' civil rights claims, federal law determines when a civil rights claim

3    accrues.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004)

4    (citing *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000)).

5    Federal law provides that "a claim accrues when the plaintiff knows or has reason

6    to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174

7    F.3d 987, 991 (9th Cir. 1999).  Accrual begins on the date on which a plaintiff

8    becomes aware of an adverse action, not when a plaintiff suspects that a legal

9    wrong has been committed.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d

10   1044, 1049-50 (9th Cir. 2008).

11   Here, the Deere Defendants argue that Plaintiffs' claims under all of the

12   applicable statutes of limitations are barred.  ECF No. 91 at 19-20.  According to

13   the Deere Defendants, the last allegedly discriminatory act occurred on January 8,

14   2010, when the Deere Defendants refused to renegotiate the repayment terms

15   under the bankruptcy plan.  ECF No. 91 at 20 (citing ECF No. 74 at 6-7).

16   Plaintiffs did not file their original complaint until more than four years later, on

17   September 2, 2014.  *See* ECF No. 1.  In response, Plaintiffs do not refer to a later

18   act but instead contend that the alleged misconduct constitutes "'continuing

19   violations' under § 1981 for purposes of the statute of limitations."  ECF No. 98 at

20   20.

21

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 22

The Supreme Court considered an alleged continuing violation of the Fair Housing Act in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). All of the incidents of alleged misconduct against one plaintiff in *Havens Realty* were time-barred, but another plaintiff alleged that a Fair Housing Act violation occurred within the 180-day time limit. *Id.* at 380. The Court held "that where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *See id.* at 380-81 (footnote omitted). In other words, "because [one] incident fell within the limitations period, none of the claims was barred." *See id.* at 380.

As Plaintiffs recognize, a continuing violation theory under § 1981 also requires that at least one discriminatory act occur within the filing period. ECF No. 98 at 20 (citing *Phillips v. Heydt*, 197 F. Supp. 2d 207 (E.D. Pa. 2002)). However, Plaintiffs refer to no misconduct that allegedly occurred within the filing period. Instead, they broadly claim that Plaintiffs' experiences with the Deere Defendants reflect "a steady steam [sic] and continuum properly characterized as discriminatory conduct based upon racial affiliation and ethnic identity." ECF No. 98 at 20. This conclusory allegation is insufficient to allege that any discriminatory acts occurred within the filing period for a § 1981 claim.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 23

1    Accordingly, the Court concludes that Plaintiffs' lending discrimination

2 claims are barred by the applicable statutes of limitations.

3    *4. Plausibility*

4    After considering in detail the separate claims in Plaintiffs' Second

5 Amended Complaint, the Court finds that it is appropriate to address a more

6 fundamental flaw in the theory of the case against the Deere Defendants.  Plaintiffs

7 allege that the Deere Defendants were significant actors in a scheme, driven by

8 racial and ethnic animus, to deprive Plaintiffs and other Hispanic farmers of their

9 land.  The Deere Defendants allegedly were willing even to lose large amounts of

10 money simply to ensure that Plaintiffs no longer would possess their land.

11    However, Plaintiffs have alleged *no* facts supporting their conclusion that

12 the Deere Defendants' actions were driven by discrimination.  In response to this

13 lawsuit, the Deere Defendants have proffered that after COV failed to repay its

14 debt in accordance with the bankruptcy plan, the Deere Defendants sought

15 appointment of a liquidating agent, which the bankruptcy court approved.  "As

16 between that 'obvious alternative explanation' for [the Deere Defendants' actions]

17 and the purposeful, invidious discrimination [that Plaintiffs ask the Court] to infer,

18 discrimination is not a plausible conclusion."  *See Iqbal*, 556 U.S. at 682 (internal

19 citation omitted).  Despite Plaintiffs' claims that T-16 mismanaged the property, it

20 simply is not plausible under the asserted facts in the Second Amended Complaint

21

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 24

that the Deere Defendants engaged in a discriminatory scheme of which T-16

allegedly played a role.

### 5. *Dismissal with Prejudice*

Leave to amend a complaint should be granted freely when justice so

requires.  Fed. R. Civ. P. 15(a).  However, "liberality in granting leave to amend is

subject to several limitations." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d

1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

186 (9th Cir. 1987)).  "Leave need not be granted where the amendment of the

complaint would cause the opposing party undue prejudice, is sought in bad faith,

constitutes an exercise in futility, or creates undue delay." *Id.*  Additionally, "[t]he

district court's discretion to deny leave to amend is particularly broad where

plaintiff has previously amended the complaint." *Id.*

The Court dismisses Plaintiffs' claims against the Deere Defendants with

prejudice.  For the reasons discussed above, the Court finds that allowing Plaintiffs

to amend their claims against the Deere Defendants again would be futile and

subject these defendants to undue prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Deere Defendants' Motion to Dismiss Plaintiffs' Second
   Amended Complaint, **ECF No. 91**, is **GRANTED**.  The Court will
   issue a separate order regarding the Deere Defendants' Motion for
   Sanctions, ECF No. 112.

ORDER GRANTING MOTION TO DISMISS DEERE DEFENDANTS ~ 25

2.  The Deere Defendants are **DISMISSED WITH PREJUDICE**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** this 10th day of July 2015.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Chief United States District Court Judge