UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CERVANTES ORCHARDS & VINEYARDS, LLC, a Washington limited liability corporation; CERVANTES NURSERIES, LLC, a Washington limited liability corporation; CERVANTES PACKING & STORAGE, LLC, a Washington limited liability corporation; MANCHEGO REAL, LLC, a Washington limited liability corporation; JOSE G. CERVANTES and CYNTHIA C. CERVANTES, individually, and upon behalf of their community property marital estate; | NO:  1:14-CV-3125-RMP

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT |

                    Plaintiffs,

        v.

AMERICAN WEST BANK, a corporation; SKBHC HOLDINGS, LLC, a Washington limited liability corporation; T-16 MANAGEMENT CO, LTD, a Washington corporation; GARY JOHNSON and LINDA JOHNSON, individually and upon behalf of their community property marital estate; NW MANAGEMENT REALTY SERVICES, INC, a Washington corporation also known as Northwest Farm Management Company; and ROBERT WYLES and MICHELLE WYLES, individually and upon behalf of their community property marital estate,

                    Defendants.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 1

1    Before the Court are motions to dismiss filed by Defendants AmericanWest

2   Bank ("AmericanWest") and SKBHC Holdings, LLC ("SKBHC"), ECF No. 76,

3   and by Defendants Robert and Michelle Wyles, ECF No. 79.  Also before the

4   Court are motions for summary judgment filed by Defendants T-16 Management

5   Co., Ltd. ("T-16") and Gary and Linda Johnson, ECF No. 88, and by Defendant

6   SKBHC Holdings, LLC, ECF No. 122.  The Court has reviewed all of the

7   documents filed in support of and in opposition to these motions, including

8   Plaintiffs' supplemental authority, ECF No. 127.

9                                    BACKGROUND

10   Plaintiffs constitute a farming group that grows crops including apples,

11   pears, grapes, and cherries.  ECF No. 74 at 4.  Plaintiffs assert that Defendants

12   engaged in a broad scheme of misconduct involving racketeering, extortion, fraud,

13   and civil rights violations.  *See* ECF No. 74 at 17-24.  Plaintiffs claim that the

14   purpose of the scheme was to dispossess them of their property and business.  *See*

15   ECF No. 74 at 17-18.

16   Plaintiffs assert that in October 2009, AmericanWest, in its role in the

17   scheme, refused to accept a credit application that Plaintiffs had filed.  *See* ECF

18   No. 74 at 14.  AmericanWest also allegedly refused applications for credit that

19   were filed by similarly situated Hispanic farm owners, required excessive collateral

20   to secure loans, and demanded immediate payment from Plaintiffs without a

21   rational justification.  ECF No. 74 at 14-15.  SKBHC is alleged to have acted in

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 2

concert and conspired with AmericanWest in regard to these practices, which Plaintiffs contend were predicated on racial and ethnic prejudice.  ECF No. 74 at 15.

Plaintiffs claim that Defendants' alleged scheme forced Plaintiff Cervantes Orchards & Vineyards, LLC ("COV") to file for bankruptcy.  *See* ECF No. 74 at 2. A plan was adopted in COV's bankruptcy, requiring COV to satisfy its debt to Deere Credit, Inc. ("DCI") by December 31, 2009. [1]  ECF Nos. 74 at 5.  COV failed to repay DCI fully by the deadline, and on January 8, 2010, DCI moved the bankruptcy court for an order appointing a liquidating agent pursuant to the terms of the bankruptcy plan.  ECF No. 74 at 6-7.  The bankruptcy court appointed T-16 as the liquidating agent and ordered COV to turn over all control of the orchards that constituted collateral for the debt owed to DCI.  *See* ECF No. 74 at 7-8. Defendant Gary Johnson is a director of T-16.  *See* ECF No. 74, Ex. 1 at 2.

Plaintiffs contend that COV turned over control of the orchards to T-16 on or before March 17, 2010.  ECF No. 74 at 8.  According to the Second Amended Complaint, no farming activities or operations took place on the orchards for over a week after T-16 took over, despite Plaintiff Jose Cervantes's warnings that the orchards required frost protection.  ECF No. 74 at 8.  Plaintiffs assert that the

---

[1] DCI, Deere & Company, John Deere Capital Corporation, John Deere Financial, f.s.b. f/k/a FPC Financial, and Deere Credit Services, Inc. (collectively, the "Deere Defendants"), were dismissed in a prior order.  ECF No. 128.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 3

1  failure to provide the necessary protection resulted in damage to the orchards.

2  ECF No. 74 at 8.

3  　　　　With DCI's approval, T-16 hired Northwest Management and Realty

4  Services, Inc., a.k.a Northwest Farm Management ("NWFM"), to manage the

5  property.  ECF No. 74 at 8.  Mr. Wyles was a partial owner of NWFM.  *See* ECF

6  Nos. 74, Ex. 1 at 2; 95 at 2.

7  　　　　Plaintiffs claim that items of their personal property, smudge pots, were

8  wrongfully transported from the orchards "by persons believed to be employed by

9  NWFM" to farm land that Mr. Wyles owned and operated.  ECF No. 74 at 9.

10  Plaintiffs further contend that Scott Anderson, another associate of NWFM, filed a

11  false declaration in bankruptcy court.  *See* ECF No. 74 at 10.  The false declaration

12  allegedly convinced the bankruptcy court to prohibit Mr. Cervantes from entering

13  the orchards, which in turn resulted in a number of injuries to Plaintiffs, including

14  that workers and supplies were diverted from COV's land to other land managed

15  by NWFM.  *See* ECF No. 74 at 10-11.

16  　　　　Plaintiffs also assert that multiple Defendants sought to conceal from COV

17  and from the bankruptcy court a settlement agreement that concerned damage to

18  apples that a buyer had acquired at an apple orchard auction in June 2010.  ECF

19  No. 74 at 13.  The buyer, according to Plaintiffs' allegations, claimed that the

20  apples were damaged because of the failure to use proper sprays.  ECF No. 74 at

21  13.  Plaintiffs assert that NWFM, T-16, Mr. Wyles, and Mr. Anderson were parties

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 4

to the agreement.  ECF No. 74 at 13.  The settlement agreement included a confidentiality provision, which Plaintiffs contend was meant to conceal from the bankruptcy court and from Plaintiffs the sale of a particular block of property. ECF No. 74 at 13.

Plaintiffs further allege in the Second Amended Complaint that AmericanWest sold Plaintiffs' property "for greatly diminished prices[,]" ECF No. 74 at 3, which Plaintiffs argue were the result of the other Defendants' efforts to devalue the property, ECF No. 85 at 15.

In the first and second claims of the Second Amended Complaint, Plaintiffs allege that NWFM, T-16, Mr. Johnson, Mr. Wyles and AmericanWest violated provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO") found at 18 U.S.C. § 1962(c), (d).  ECF No. 74 at 17, 21.  Plaintiffs also claim that AmericanWest and SKBHC committed civil rights violations, which Plaintiffs pursue under 42 U.S.C. §§ 1981, 1982, 1985(3), and 1986.  ECF No. 74 at 23-24.

ANALYSIS

As noted at the beginning of this Order, two motions to dismiss and two motions for summary judgment currently are pending in this matter.  For the reasons discussed below, the Court finds that Plaintiffs have failed to state claims upon which relief can be granted against all remaining Defendants.  Thus, the Court reviews the Second Amended Complaint under the standard of a motion to dismiss.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 5

1    *Motion to Dismiss Standard*

2        The Federal Rules of Civil Procedure allow for the dismissal of a complaint

3    where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R.

4    Civ. P. 12(b)(6).  A motion to dismiss brought pursuant to this rule "tests the legal

5    sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The

6    Supreme Court has offered the following method for assessing the sufficiency of a

7    complaint:

8        [A] court considering a motion to dismiss can choose to begin by
         identifying pleadings that, because they are no more than conclusions,
9        are not entitled to the assumption of truth.  While legal conclusions
         can provide the framework of a complaint, they must be supported by
10       factual allegations.  When there are well-pleaded factual allegations, a
         court should assume their veracity and then determine whether they
11       plausibly give rise to an entitlement to relief.

12    *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

13        To withstand dismissal, a complaint must contain "enough facts to state a

14    claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

15    544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

16    content that allows the court to draw the reasonable inference that the defendant is

17    liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A plaintiff is not

18    required to establish a probability of success on the merits; however, he or she

19    must demonstrate "more than a sheer possibility that a defendant has acted

20    unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

21

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 6

*1. Michelle Wyles and Linda Johnson*

As an initial matter, Plaintiffs do not appear to assert that Defendants Michelle Wyles or Linda Johnson committed any wrongdoing.  In regard to Ms. Wyles, Plaintiffs admit that they included her in this action because Mr. Wyles's alleged misconduct was on behalf of the couple's community property.  ECF No. 87 at 1 n.1.  "Therefore, Michelle Wyles is included as a defendant for purposes . . . affecting relief only."  ECF No. 87 at 1 n.1.  Plaintiffs apparently named Ms. Johnson as a defendant for the same reason.  *See* ECF No. 74 (Second Amended Complaint listing Ms. Johnson only in caption and introductory paragraph).

"Under Washington law a personal judgment against a married man is presumed to be against the community."  *United States v. Overman*, 424 F.2d 1142, 1148 (9th Cir. 1970).  Thus, a defendant's spouse need not be named in an action in order to obtain a judgment against the marital community.  *See La Framboise v. Schmidt*, 42 Wn.2d 198, 200 (1953).

Here, because Plaintiffs do not claim that Ms. Wyles or Ms. Johnson committed any misconduct, the Court finds that it is appropriate to dismiss them from this action on that basis.

*2. RICO*

Plaintiffs claim that NWFM, T-16, Mr. Johnson, Mr. Wyles and AmericanWest (collectively, "RICO Defendants") violated RICO provisions found at 18 U.S.C. § 1962(c), (d).  ECF No. 74 at 17-22.  Subsection (c) prohibits any

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 7

person associated with an enterprise that conducts interstate commerce from

participating in the enterprise's affairs through a "pattern of racketeering activity"

or collection of unlawful debt.  18 U.S.C. § 1962(c).  Subsection (d) proscribes the

conspiracy to violate subsection (c).  18 U.S.C. § 1962(d).

"Racketeering activity" includes any act that is indictable under the Hobbs

Act, 18 U.S.C. § 1951, and a number of specified acts that are "chargeable under

State law and punishable by imprisonment for more than one year."  18 U.S.C. §

1961(1)(A), (B); *see also United Bhd. of Carpenters & Joiners of Am. v. Bldg. &

Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).  A plaintiff

must allege at least two predicate racketeering acts to state a "pattern" of

racketeering that would establish a RICO violation.  18 U.S.C. § 1961(5); *Turner

v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).  "A 'pattern' of racketeering activity

also requires proof that the racketeering predicates are related and 'that they

amount to or pose a threat of continued criminal activity.'"  *Turner*, 362 F.3d at

1229 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

Here, Plaintiffs allege that some or all of the RICO Defendants committed

extortion, bankruptcy fraud, and mail and wire fraud, all of which are predicate

racketeering acts.  *See* ECF No. 74 at 19-20; 18 U.S.C. § 1961(1) (identifying

extortion, "any offense involving fraud connected with a [bankruptcy] case[,]" and

mail and wire fraud as predicate RICO acts).  The Court considers whether

Plaintiffs sufficiently have pleaded any of the alleged RICO predicate acts.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 8

1    *a. Extortion*

2    Plaintiffs allege that the RICO Defendants committed acts of extortion under

3    the Hobbs Act and state law by conspiring to obtain and in fact obtaining

4    Plaintiffs' real property "with Plaintiffs' consent, induced by the wrongful use of

5    fear of economic harm . . . ."  ECF No. 74 at 19-20.

6    The Hobbs Act defines extortion as "the obtaining of property from another,

7    with his consent, induced by wrongful use of actual or threatened force, violence,

8    or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).[2]  "Fear," in this

9    context, "can include fear of economic loss."  *United Bhd. of Carpenters*, 770 F.3d

10   at 838.  However, because fear of economic loss also plays a lawful role in

11   business transactions, courts must "differentiate between legitimate use of

12   economic fear—hard bargaining—and wrongful use of such fear—extortion."  *Id.*

13   Although it can be difficult to distinguish hard bargaining from extortion, the Ninth

14   Circuit has relied on a Supreme Court holding "that a defendant violates the Hobbs

15   Act only 'where the obtaining of the property would itself be "wrongful" because

16   the alleged extortionist has no lawful claim to that property.'"  *Id.* (quoting *United*

17   *States v. Enmons*, 410 U.S. 396, 400 (1973)).

18

19   [2] Washington State law provides that "'[e]xtortion' means knowingly to obtain or attempt to obtain by threat property or services of the owner . . . ."  RCW 9A.56.110.  Although Plaintiffs

20   listed both state and federal law in the section of the Second Amended Complaint regarding extortion, Plaintiffs discuss only the federal definition in their briefing and do not contend that federal and state extortion laws differ materially.  *See, e.g.*, ECF No. 87 at 10-12.  Accordingly,

21   the Court considers the federal definition of the term.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 9

The primary Defendants responsible for the alleged extortion were DCI and its related entities. As the Court found in a prior order, however, Plaintiffs failed to plead sufficiently that DCI or the related entities committed extortion. ECF No. 128 at 13-16. Plaintiffs failed to allege facts to support their claim that DCI used fear to induce Plaintiffs to enter into the original business relationship with DCI or that fear was a tool that DCI later employed when it allegedly attempted to obtain Plaintiffs' property in the course of bankruptcy.

Here, for the same reasons discussed in the order regarding DCI, Plaintiff's more tangential theory of extortion against the RICO Defendants who managed the orchards also lacks merit. Even assuming that these Defendants intentionally mismanaged the orchards, it is undisputed that T-16 and NWFM (and, in turn, Mr. Johnson and Mr. Wyles as officers of those entities) had lawful authority to operate the property because of the bankruptcy court's appointment order. In other words, the facts as alleged by Plaintiffs are inconsistent with the theory that these Defendants somehow used force or fear to coerce Plaintiffs to part with their property.

Plaintiffs' assertion that AmericanWest committed extortion also is pleaded insufficiently. Plaintiffs argue that AmericanWest participated in the enterprise so that it and DCI could sell the orchards to friends and customers for greatly reduced prices. ECF No. 85 at 15. Plaintiffs also aver that AmericanWest's allegedly discriminatory denial of Plaintiffs' credit applications and excessive collateral

1 requirements support their allegation of extortion.  ECF No. 85 at 15-16.

2 However, Plaintiffs do not explain how AmericanWest allegedly used economic

3 fear to induce Plaintiffs to give up their property or how AmericanWest's allegedly

4 discriminatory lending practice would have such a result.

5     The Court finds that Plaintiffs have failed to state sufficient facts to support

6 their theory that the RICO Defendants committed predicate acts of extortion.

7     *b. Fraud*

8     Plaintiffs also contend that the RICO Defendants committed predicate RICO

9 acts of bankruptcy fraud in violation of 18 U.S.C. §§ 152 and 153.  ECF No. 74 at

10 20.  Section 152 prohibits, among other acts, knowingly and fraudulently

11 concealing property of a bankruptcy estate and knowingly and fraudulently making

12 a false declaration in or in relation to a bankruptcy case.  18 U.S.C. § 152(1), (3).

13 Section 153 prohibits certain persons with access to bankruptcy estate property or

14 documents from knowingly and fraudulently appropriating or embezzling the

15 estate's property.  18 U.S.C. § 153.  Section 153 applies to "one who has access to

16 property or documents belonging to an estate by virtue of the person's participation

17 in the administration of the estate[,]" such as the employee of a trustee or

18 custodian.  *See* 18 U.S.C. § 153(b).

19     Like other fraud claims, RICO predicate acts of fraud must meet the

20 heightened pleading requirement found in Federal Rule of Civil Procedure 9(b).

21 *See, e.g.*, *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 11

01 (9th Cir. 1986). "Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). The heightened pleading requirement "serves the federal rule's purpose by apprising the defendant or defendants of the nature of the claim and the acts or statements or failures to disclose relied upon by the plaintiff as constituting the fraud being charged against each of them." 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1297 (3d ed.).

After carefully reviewing the Second Amended Complaint, the Court finds that all but one of Plaintiffs' alleged incidents of fraudulent conduct lack sufficient particularity. The Court considers below each of the alleged RICO predicate acts of fraud.

### i. T-16's Failure to Protect Orchards from Frost

Plaintiffs claim that, for over a week after COV turned over control of the orchards to T-16, no farming activities took place "despite the fact that Plaintiff Jose Cervantes warned T-16 repeatedly of the need for frost protection." ECF No. 74 at 8.

Assuming the veracity of Plaintiffs' assertions, the Court finds that Plaintiffs allege facts that arguably support a RICO predicate act of bankruptcy fraud. Plaintiffs allege that T-16 purposefully failed to care for the property during the first week that it was in T-16's care, with the intention of lowering the property's

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 12

value so that it could be acquired by other members of the alleged enterprise.  *See*

ECF No. 74 at 8-9, 11.  In other words, Plaintiffs' description sufficiently alleges

fraud because it is "accompanied by 'the who, what, when, where, and how' of the

misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)) (internal

quotation marks omitted).

       Thus, Plaintiffs arguably have alleged one predicate RICO act.

*ii. Removal of Smudge Pots*

       Plaintiffs further allege that "persons believed to be employed by NWFM"

stole truckloads of smudge pots from the orchards and transported them to property

owned by Mr. Wyles and Mr. Anderson.  ECF No. 74 at 9.

       Unlike the assertion that T-16 committed fraud by intentionally neglecting

the orchards, Plaintiffs do not provide sufficient specificity regarding the allegation

that NWFM stole smudge pots from COV.  The Court notes that failing to identify

the individuals who allegedly took the property is not alone a basis for concluding

that Plaintiffs do not meet heightened pleading requirements.  *See* Charles Alan

Wright et al., *supra,* at § 1298 ("[Rule 9(b)] does not require absolute particularity

or a recital of the evidence, especially when some matters are beyond the

knowledge of the pleader and can only be developed through discovery.").

However, Plaintiffs fail to plead when the smudge pots were stolen or what facts

support their belief that NWFM employed the persons who took the property.  The

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 13

1  Court finds that such information is necessary to apprise the RICO Defendants of

2  the claims brought against them.  *Cf. Perkumpulan Investor Crisis Ctr. Dressel-*

3  *WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1112 (W.D. Wash. 2011)

4  (RICO predicate act of wire fraud pleaded with sufficient particularity where

5  plaintiffs pleaded date, amount, transferor, and recipient of allegedly fraudulent

6  transfers).

7      *iii. False Declaration*

8      Plaintiffs also claim that the submission of a false declaration by NWFM's

9  co-owner, Mr. Anderson, constitutes a predicate act.  ECF No. 74 at 10.  The

10  Second Amended Complaint states that the declaration caused the bankruptcy

11  court to prohibit Mr. Cervantes from entering the orchards.  *See* ECF No. 74 at 10.

12      The contents of the declaration, however, are not alleged.  This does not

13  comply with Rule 9(b)'s heightened pleading requirements.  *See Edwards v. Marin*

14  *Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (dismissing RICO claim because

15  although plaintiff named the parties involved and alleged the time and place that

16  purportedly fraudulent legal notices were delivered, complaint failed to allege

17  notices' specific contents, and plaintiff failed to attach notices to her complaint or

18  to any other filing).

19      *iv. Various Damage to Orchards*

20      Plaintiffs allege additionally that "T-16, NWFM, Anderson, and Wyles,

21  aided and abetted by Deere Credit, Inc.[,]" embezzled property from the

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 14

bankruptcy estate, charged COV expenses for labor and equipment that were used on other property, and applied minimal labor and resources to the estate property. *See* ECF No. 74 at 10-11.

However, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).

The Court finds that Plaintiffs impermissibly alleged that multiple RICO Defendants committed a variety of predicate acts. Without specification of which defendants committed which allegedly fraudulent acts, the RICO Defendants are not able to defend themselves properly. *See Destfino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011) (affirming dismissal because plaintiff failed to allege which defendants were accused of each fraudulent statement or act). It seems that rather than investigating these alleged acts before filing suit, Plaintiffs have elected to wait until later in the progress of this case to attribute acts to specific RICO Defendants. Such a strategy is not allowed under Rule 9(b). *See* Charles Alan Wright et al., *supra,* at § 1296 ("[A] heightened pleading requirement imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff.")

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 15

1     *v. Concealment of Settlement Agreement*

2          Plaintiffs also claim that "Deere Credit, Inc., NWFM, Anderson, Wyles, and

3     T-16" committed bankruptcy fraud by seeking to conceal from the bankruptcy

4     court a settlement agreement that would have revealed the sale of the property as

5     well as the true extent of the damage to the collateral property.  *See* ECF Nos. 74 at

6     13; 87 at 13.

7          Again, similar to the allegations of damage to the orchards, Plaintiffs

8     incorrectly lump the RICO Defendants together instead of specifying how each

9     defendant contributed to the alleged fraud.

10          Additionally, to the extent that Plaintiffs rely on the existence of a

11    confidentiality provision in the alleged settlement agreement to assert that the

12    named defendants intended to conceal the agreement from the bankruptcy court,

13    the proposition is not plausible.  The Court takes judicial notice of the fact that

14    settlement agreements commonly include confidentiality provisions. [3]

15          In sum, Plaintiffs have alleged at most one predicate RICO act of fraud,

16    which is insufficient to plead a substantive RICO violation under 18 U.S.C. §

17    1962(c).  *See* 18 U.S.C. § 1961(5) ("'pattern of racketeering activity' requires at

18

19    _____
      [3] Plaintiffs' mail and wire fraud claims apparently are based on the same substantive factual
20    assertions as the alleged bankruptcy fraud.  *See* ECF No. 74 at 20; *see also, e.g.*, ECF No. 87 at
      13 (". . . Plaintiffs will seek to offer proof that mailings and/or wirings were made to demand a
21    copy of the [settlement] agreement").  The mail and wire fraud claims fail for the same reasons
      discussed above in regard to the alleged bankruptcy fraud.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 16

least two acts of racketeering activity").[4]  Because Plaintiffs have not stated a

substantive RICO claim, their RICO conspiracy claim fails as well.  *See Religious*

*Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we

find that [plaintiff] has failed to allege the requisite substantive elements of RICO,

the conspiracy cause of action cannot stand.").[5]

### 3. Lending Discrimination

Plaintiffs contend that AmericanWest and SKBHC violated Plaintiffs' civil

rights.  ECF No. 74 at 23-24.  AmericanWest and SKBHC argue that these claims

should be dismissed because they are barred by statutes of limitations.  ECF No. 76

at 2.

Plaintiffs assert discrimination claims pursuant to 42 U.S.C. §§ 1981, 1982,

1985(3), and 1986.  ECF No. 74 at 22-23.  The parties do not dispute that a four-

year statute of limitations governs Plaintiffs' claim brought under § 1981.  *See*

*Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-85 (2004) (discussing 28

---

[4] Moreover, as discussed below, the Court finds that the Second Amended Complaint as a whole lacks plausibility.

[5] In opposition to the Wyles' motion to dismiss, Plaintiffs refer to their allegation that NWFM lacked necessary farm labor licensing and that T-16 and DCI were aware of that fact.  ECF No. 87 at 5.  Plaintiffs contend that this supports the "'conduct' element of the civil racketeering claim" against Mr. Wyles, who was a partial owner of NWFM.  *See* ECF No. 87 at 5.  However, it is unclear whether Plaintiffs assert that NWFM's alleged failure to obtain proper licensing and T-16's knowledge of that fact constitute fraud or some other predicate act.  Plaintiffs have not pleaded sufficient facts for the Court to discern how this alleged conduct could constitute racketeering.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 17

1    U.S.C. § 1658).[6]  Washington's three-year statute of limitations for personal injury

2    actions, RCW 4.16.080(2), governs claims brought pursuant to 42 U.S.C. §

3    1985(3).  *See Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993)

4    (per curiam) (applying California's analogous statute of limitations).  The same

5    rule controls § 1982 claims.  *See Mitchell v. Sung*, 816 F. Supp. 597, 600 (N.D.

6    Cal. 1993) ("Because section 1982 does not have a statute of limitations, courts

7    apply the applicable state statute of limitations.").  A one-year statute of limitations

8    applies to claims under § 1986.  42 U.S.C. § 1986.

9         Although the relevant state statute of limitations applies to some of

10   Plaintiffs' civil rights claims, federal law determines when a civil rights claim

11   accrues.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004)

12   (citing *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000)).

13   ─────────────────
[6] Section 1658's four-year statute of limitations applies to actions brought under federal statutes
     that were enacted after December 1, 1990. *Jones*, 541 U.S. at 371.  In *Jones*, the Court explained
14   that § 1658 applies to claims that were made possible by an amendment to § 1981 that occurred
     after December 1, 1990. *Id.* at 383.  Racial harassment in employment is an example of a § 1981
15   claim that was not possible under the pre-1990 version of the section. *See id.*  Some § 1981
     claims, however, instead remain subject to the most analogous statute of limitations under state
16   law. *See, e.g.*, *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 n.2 (9th Cir.
     2008) (applying forum state's statute of limitations to failure-to-hire claim, which was
17   cognizable under pre-1990 version of § 1981).  The applicable statute of limitations under
     Washington State law would be the three-year limitation for a lawsuit alleging personal injury,
18   RCW 4.16.080(2).  *See Beauregard v. Lewis Cnty., Wash.*, No. C05-5738-RJB, 2006 WL
     2924612, at *8 (W.D. Wash. Oct. 10, 2006) (citing *Taylor v. Regents of Univ. of Cal.*, 993 F.2d
19   710, 711-12 (9th Cir. 1993)).  The parties do not address whether Plaintiffs' § 1981 claim would
     have been cognizable under the pre-1990 version of the law.  However, because the parties do
20   not dispute that the federal four-year statute of limitations applies and because the issue does not
     affect the Court's decision, the Court assumes, for purposes of this motion, that the longer statute
21   of limitations is applicable.

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 18

Federal law provides that "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).  Accrual begins on the date on which a plaintiff becomes aware of an adverse action, not when a plaintiff suspects that a legal wrong has been committed.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1049-50 (9th Cir. 2008).

Here, AmericanWest and SKBHC assert that the only discriminatory act that they allegedly committed was denying Plaintiffs' credit application in October 2009.  ECF No. 76 at 3; *see also* ECF No. 74 at 14.  Plaintiffs did not file their original complaint until more than four years later, on September 2, 2014.  *See* ECF No. 1.  In response, Plaintiffs argue that they are no less injured today "because they know if they applied for credit it would be declined as a result of defendants' ongoing practices."  ECF No. 85 at 6.  In other words, Plaintiffs contend that they have raised "allegations of continuing discriminatory lending[,]" referring to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  *See* ECF No. 85 at 7.

In *Havens Realty*, the Court considered an alleged continuing violation of the Fair Housing Act.  455 U.S. at 380.  All of the incidents of alleged misconduct against one plaintiff in *Havens Realty* were time-barred, but another plaintiff alleged that a Fair Housing Act violation occurred within the 180-day time limit.  *Id.* at 380.  The Court held "that where a plaintiff, pursuant to the Fair Housing

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 19

1    Act, challenges not just one incident of conduct violative of the Act, but an

2    unlawful practice that continues into the limitations period, the complaint is timely

3    when it is filed within 180 days of the last asserted occurrence of that practice."

4    *See id.* at 380-81 (footnote omitted).  In other words, "because [one] incident fell

5    within the limitations period, none of the claims was barred."  *See id.* at 380.

6         Here, unlike in *Havens Realty*, Plaintiffs refer to no incidents of alleged

7    misconduct that occurred within four years of the date on which they filed their

8    original complaint.  Thus, Plaintiffs cannot rely on a theory of continuing

9    discrimination to circumvent the applicable statutes of limitation, which bar their

10   civil rights claims.

11        In sum, the Court finds that Plaintiffs have failed to state an actionable claim

12   that AmericanWest or SKBHC violated their civil rights.

13        *4. Plausibility*

14        Having explained in detail why Plaintiffs' allegations in the Second

15   Amended Complaint fail to state a claim, the Court finds that it is necessary also to

16   note an alternative and troubling basis for dismissing this action.

17        Although Plaintiffs assert that Defendants were motivated by racial and

18   ethnic animosity to deprive Plaintiffs of their land and livelihood, a serious

19   contention, the factual allegations supporting such an egregious goal are

20   surprisingly paltry.  The most direct allegation concerning discrimination was

21   brought against former Defendant Northwest Farm Credit Services, whose

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 20

employee allegedly responded to Mr. Cervantes's inquiry about the denial of a loan

application with the statement: "You people don't pay." *See* ECF No. 74 at 16.

However, Northwest Farm Credit Services was not included in Plaintiffs' RICO

claims. *See* ECF No. 74 at 17, 21.

Against the RICO Defendants, Plaintiffs offer only conclusory statements

that prejudice guided their actions. *See*, *e.g.*, ECF No. 74 at 5 ("[T]his enterprise

worked together to exact excessive terms and conditions upon the Plaintiffs and

other Hispanic farming operators by failing to release collateral demanded to

secure repayment of loans and credit lines . . . ."), 19 ("[T]he course of conduct

engaged in by said RICO defendants was designed to deprive Plaintiffs and

similarly situated farming operators and owners who are of Hispanic origin of their

interests in business and/or property.").

The Court does not imply that allegations of racial discrimination are

necessary for Plaintiffs to bring a RICO action. However, in the absence of factual

allegations to support Plaintiffs' claims of discriminatory intent, or any other basis

for believing that Defendants' actions were the result of a coordinated attempt to

obtain Plaintiffs' property and business, Plaintiffs' RICO claim simply is

implausible. The Court repeats the reasoning adopted in its order dismissing the

Deere Defendants, who appear to be the principal actors in Plaintiffs' alleged

RICO enterprise:

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR
SUMMARY JUDGMENT ~ 21

> In response to this lawsuit, the Deere Defendants have proffered that after COV failed to repay its debt in accordance with the bankruptcy plan, the Deere Defendants sought appointment of a liquidating agent, which the bankruptcy court approved. "As between that 'obvious alternative explanation' for [the Deere Defendants' actions] and the purposeful, invidious discrimination [that Plaintiffs ask the Court] to infer, discrimination is not a plausible conclusion."

ECF No. 128 at 24 (quoting *Iqbal*, 556 U.S. at 682 (internal citation omitted)).

While the complex RICO scheme asserted in Plaintiffs' Second Amended Complaint is of course possible, it is not plausible. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 557). The Court finds that Plaintiffs' allegation of a broad, discriminatory scheme is implausible.

### 5. Dismissal with Prejudice

Leave to amend a complaint should be granted freely when justice so requires. Fed. R. Civ. P. 15(a). However, "liberality in granting leave to amend is subject to several limitations." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* Additionally, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.*

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 22

Plaintiffs' original complaint spanned 337 pages, divided into 737 paragraphs.  ECF No. 1.  The First Amended Complaint, comprising 143 pages, was accompanied by a 469-page RICO Case Statement.  ECF Nos. 29, 29-1.  In addition to their unusual length, Plaintiffs' first two pleadings were difficult to comprehend.

The Court ordered Plaintiffs to file a Second Amended Complaint, with a set page limit.  ECF No. 72.  The Second Amended Complaint presented a clearer picture of Plaintiffs' claims.  However, after significant expenditure of resources by the Court and, presumably, by Defendants, the Court has determined that those claims fail as a matter of law.

For the reasons discussed throughout this Order, the Court finds that allowing Plaintiffs to amend their claims would be futile and would cause undue prejudice to Defendants.  The Court dismisses Plaintiffs' Second Amended Complaint with prejudice.

*6. Attorney Fees*

The Wyles request attorney fees and costs for the expense of defending against this lawsuit.  ECF No. 79 at 12.  "[The Court's] basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule:  Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-253 (2010) (internal quotation marks omitted).

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 23

The Wyles' request for attorney fees and costs is unaccompanied by any reference to the applicable authority for imposing such a sanction.  The Court denies the Wyles' request at this time, but the Court will entertain motions for sanctions that include a discussion of relevant authority.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants AmericanWest Bank and SKBHC Holdings LLC's Motion to Dismiss, **ECF No. 76**, is **GRANTED**.

2. Defendants Robert and Michelle Wyles's Motion to Dismiss, **ECF No. 79**, is **GRANTED**.

3. The Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

4. Defendants T-16 Management Co., Ltd., and Gary and Linda Johnson's Motion for Summary Judgment, **ECF No. 88**, is **DENIED AS MOOT**.

5. Defendant SKBHC Holdings LLC's Motion for Summary Judgment, **ECF No. 122**, is **DENIED AS MOOT**.

/ / /

/ / /

/ / /

/ / /

/ / /

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 24

6.  Any motion for attorney fees shall be filed **within 30 days** of the date of this Order, even though the Court will instruct the Clerk's Office to close the case administratively.

The District Court Clerk is directed to enter this Order, provide copies to counsel, enter judgment accordingly, and **CLOSE** this case.

**DATED** this 17th day of July 2015.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT ~ 25